**[J-118A-2020, J-118B-2020, J-118C-2020, J-118D-2020, J-118E-2020 and J-118F-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : | No. 31 EAP 2020 |
| | : | |
| | : | |
| | : | |
| | : | SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : | |
| | : | |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : | No. 32 EAP 2020 |
| | : | |
| | : | |
| | : | |
| | : | SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : | |
| | : | |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : | No. 33 EAP 2020 |
| | : | |
| | : | |
| | : | |
| | : | SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : | |
| | : | |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : | No. 34 EAP 2020 |
| | : | |
| | : | |
| | : | |
| | : | SUBMITTED: November 18, 2020 |
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : | |
| | : | |
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : | No. 35 EAP 2020 |
| | : | |
| | : | |
| | : | |
| | : | SUBMITTED: November 18, 2020 |
| | : | |

| | |
|---|---|
| APPEAL OF: DONALD J. TRUMP FOR PRESIDENT, INC. | : |
| | : |
| IN RE: 2,349 BALLOTS IN THE 2020 GENERAL ELECTION | : No. 29 WAP 2020 |
| | : |
| | : Appeal from the Order of the |
| | : Commonwealth Court entered |
| APPEAL OF: ALLEGHENY COUNTY | : November 19, 2020 at No. 1162 CD |
| BOARD OF ELECTIONS | : 2020, reversing the Order of the |
| | : Court of Common Pleas of Allegheny |
| | : County entered November 18, 2020 |
| | : at No. GD 20-011654 and remanding |
| | : |
| | : SUBMITTED: November 20, 2020 |
| | : |

*Justice Donohue announces the judgment of the Court,
joined by Justices Baer, Todd and Wecht, and files an
opinion joined by Justices Baer and Todd*

**<u>OPINION ANNOUNCING THE JUDGMENT OF THE COURT</u>**

**JUSTICE DONOHUE**                    **DECIDED: November 23, 2020**

These appeals present the question of whether the Election Code requires a

county board of elections to disqualify mail-in or absentee ballots submitted by qualified

electors who signed the declaration on their ballot's outer envelope but did not handwrite

their name, their address, and/or a date, where no fraud or irregularity has been alleged.

Pursuant to our longstanding jurisprudence, central to the disposition of these appeals is

whether the information is made mandatory by the Election Code or whether the inclusion

of the information is directory, i.e., a directive from the Legislature that should be followed

but the failure to provide the information does not result in invalidation of the ballot.

We are guided by well-established interpretive principles including that where the

language of a statute is unambiguous, the language shall be controlling.  1 Pa.C.S. §

1921(b).  In the case of ambiguity, we look to ascertain the legislative intent, and in election cases, we adhere to the overarching principle that the Election Code should be liberally construed so as to not deprive, inter alia, electors of their right to elect a candidate of their choice.  *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 356 (Pa. 2020).  Stated more fully:

> Election laws will be strictly enforced to prevent fraud, but ordinarily will be construed liberally in favor of the right to vote.  All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor.  Where the elective franchise is regulated by statute, the regulation should, when and where possible, be so construed as to insure rather than defeat the exercise of the right of suffrage.  Technicalities should not be used to make the right of the voter insecure.  No construction of a statute should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning.

*Appeal of James*, 105 A.2d 64, 65-66 (Pa. 1954).

Guided by these principles and for the reasons discussed at length in this opinion, we conclude that the Election Code does not require boards of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed the declaration on their ballot's outer envelope but did not handwrite their name, their address, and/or date, where no fraud or irregularity has been alleged.

* * *

In connection with five of these consolidated appeals, Petitioner Donald J. Trump for President, Inc. (the "Campaign") challenges the decision of the Philadelphia County Board of Elections (the "Philadelphia Board") to count 8,329 absentee and mail-in ballots. The Campaign does not contest that these ballots were all timely received by the Philadelphia Board prior to 8:00 p.m. on November 3, 2020 (election day); that they were cast and signed by qualified electors; and that there is no evidence of fraud associated

with their casting. The Campaign instead contends that these votes should not be counted because the voters who submitted them failed to handwrite their name, street address or the date (or some combination of the three) on the ballot-return outer envelope. The Philadelphia County Court of Common Pleas, per the Honorable James Crumlish, upheld the Philadelphia Board's decision to count the ballots, ruling that the Election Code does not mandate the disqualification of ballots for a failure to include the challenged information, stressing that the inclusion or exclusion of this information does not prevent or promote fraud. The Campaign pursued an appeal to the Commonwealth Court. This Court granted the Philadelphia Board's application to exercise our extraordinary jurisdiction, 42 Pa. C.S. § 726, over these cases then pending in the Commonwealth Court.

At or around the same time that the matters were being litigated in Philadelphia, across the state in Allegheny County, Nicole Ziccarelli, a candidate for the Pennsylvania Senate in the 45th Senatorial District (Allegheny-Westmoreland counties) challenged the November 10, 2020 decision of the Allegheny County Board of Elections (the "Allegheny County Board") to canvass 2,349 mail-in ballots that contained a signed – but undated – declaration. Again, all of the outer envelopes were signed, they are conceded to be timely and there are no allegations of fraud or illegality. On November 18, 2020, the Court of Common Pleas of Allegheny County, per the Honorable Joseph James, upheld the decision of the Allegheny County Board to count the ballots. *Ziccarelli v. Allegheny County Board of Elections*, No. GD-20-011654 (Allegheny Cty. Ct. Com. Pl.). Ziccarelli filed an appeal to the Commonwealth Court and an application in this Court requesting that we exercise extraordinary jurisdiction over her appeal. During the pendency of the

request to this Court, on November 19, 2020, a three-judge panel of the Commonwealth Court, with one judge dissenting, reversed the common pleas court decision.

On November 20, 2020, the Allegheny County Board filed an emergency petition for allowance of appeal, which we granted, limited to whether the ballots contained in undated outer envelopes should be invalidated. We stayed the order of the Commonwealth Court pending the outcome of this appeal and consolidated it with the Philadelphia Board cases.

In these appeals, we are called upon to interpret several provisions of the Election Code. We set them forth at the outset since they guide the resolution of these appeals.

Section 3146.6(a) provides as follows with respect to absentee ballots:

> (a) Except as provided in paragraphs (2) and (3), at any time after receiving an official absentee ballot, but on or before eight o'clock P.M. the day of the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector shall then fill out, date and sign the declaration printed on such envelope.** Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a) (emphasis added).

Section 3150.16(a) sets forth the procedure for the submission of a mail-in ballot:

> (a) General rule.--At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible

pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector shall then fill out, date and sign the declaration printed on such envelope.** Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3150.16(a) (emphasis added).

Sections 3146.4 and 3150.14(b) delegate to the Secretary of the Commonwealth the responsibility to prescribe the form of the elector's declaration on the outer envelope used to mail the absentee and mail-in ballots:

### § 3146.4. Envelopes for official absentee ballots

The county boards of election shall provide two additional envelopes for each official absentee ballot of such size and shape as shall be prescribed by the Secretary of the Commonwealth, in order to permit the placing of one within the other and both within the mailing envelope. On the smaller of the two envelopes to be enclosed in the mailing envelope shall be printed, stamped or endorsed the words "Official Election Ballot," and nothing else. **On the larger of the two envelopes, to be enclosed within the mailing envelope, shall be printed the form of the declaration of the elector, and the name and address of the county board of election of the proper county.** The larger envelope shall also contain information indicating the local election district of the absentee voter. **Said form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth and shall contain among other things a statement of the electors qualifications, together with a statement that such elector has not already voted in such primary or election.** The mailing envelope addressed to the elector shall contain the two envelopes, the official absentee ballot, lists of candidates, when authorized by section 1303 subsection (b) of this act, the uniform instructions in form and substance as

prescribed by the Secretary of the Commonwealth and nothing else.

25 P.S. § 3146.4 (emphasis added).

### § 3150.14. Envelopes for official mail-in ballots

\* \* \*

(b) Form of declaration and envelope.--**The form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth and shall contain, among other things, a statement of the elector's qualifications, together with a statement that the elector has not already voted in the primary or election**.

25 P.S. § 3150.14(b) (emphasis added).

The pre-canvassing or canvassing of absentee and mail-in ballots proceed in accordance with the dictates of 25 P.S. § 3146.8(g)(3), as follows:

### § 3146.8. Canvassing of official absentee ballots and mail-in ballots

When the county board meets to pre-canvass or canvass absentee ballots and mail-in ballots under paragraphs (1), (1.1) and (2), **the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable. If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File" verifies his right to vote**, the county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed.

25 P.S. § 3146.8(g)(3) (emphasis added).

Pursuant to the authority granted in § 3150.14(b), the Secretary of the Commonwealth developed the following declaration used in connection with the 2020 General Election:

> I hereby declare that I am qualified to vote from the below stated address at this election; that I have not already voted in this election; and I further declare that I marked my ballot in secret. I am qualified to vote the enclosed ballot. I understand I am no longer eligible to vote at my polling place after I return my voted ballot. However, if my ballot is not received by the county, I understand I may only vote by provisional ballot at my polling place, unless I surrender my balloting materials, to be voided, to the judge of elections at my polling place.
>
> [BAR CODE]
>
> Voter, sign or mark here/Votante firme o margue aqui
>
> **X**_____
>
>
> _____
> Date of signing (MM/DD/YYYY)/Fechade firme (MM/DD/YYYY)
>
> _____
> Voter, print name/Votante, nombre en letra de impreta
>
> _____
> Voter, address (street)/Votante, dirreccion (calle)
>
> [LABEL – Voters' name and address]

In addition, the Secretary issued guidance to the county boards of elections with respect to the examination of ballot return envelopes. First, on September 11, 2020, she issued the following guidance:

> 3. EXAMINATION OF DECLARATION ON BALLOT RETURN ENVELOPES:
>
> The county board of elections is responsible for approving ballots to be counted during pre-canvassing.

To promote consistency across the 67 counties, the county boards of elections should follow the following steps when processing returned absentee and mail-in ballots.

After setting aside ballots of elector's who died prior to the opening of the polls, the county board of elections shall examine the Voter's Declaration on the outer envelope of each returned ballot and compare the information on the outer envelope, i.e., the voter's name and address, with the information contained in the "Registered Absentee and Mail-in Voters File, the absentee voter's list and/or the Military Veterans' and Emergency Civilians Absentee Voters File."

If the Voter's Declaration on the return envelope is blank, that ballot return envelope must be set aside and not counted. If the board determines that a ballot should not be counted, the final ballot disposition should be noted in SURE. The ballot return status (Resp Type) should be noted using the appropriate drop-down selection.

If the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for canvassing unless challenged in accordance with the Pennsylvania Election Code.

Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes, 9/11/2020, at 3. On September 28, 2020, the Secretary offered additional guidance on the treatment of ballot return envelopes:

With regard to the outer ballot-return envelope:

A ballot-return envelope with a declaration that is filled out, dated, and signed by an elector who was approved to receive an absentee or mail-in ballot is sufficient and counties should continue to pre-canvass and canvass these ballots.

A ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted. Ballot-return envelopes must be opened in such a manner as not to destroy the declarations executed thereon.

All ballot-return envelopes containing executed declarations must be retained for a period of two years in accordance with the Election Code.

* * *

**Pre-canvass and Canvass Procedures**

At the pre-canvass or canvass, as the case may be, the county board of elections should:

- Segregate the unopened ballots of voters whose applications were challenged by the challenge deadline (5:00 PM on the Friday before the election).
    - These ballots must be placed in a secure, sealed container until the board of elections holds a formal hearing on the challenged ballots.
    - Ballot applications can only be challenged on the basis that the applicant is not qualified to vote.
- Set aside the ballot of any voter who was deceased before election day.
- Set aside any ballots without a filled out, dated and signed declaration envelope.
- Set aside any ballots without the secrecy envelope and any ballots in a secrecy envelope that include text, mark, or symbol which reveals the identity of the voter, the voter's political affiliation (party), or the voter's candidate preference.

The Election Code does not permit county election officials to reject applications or voted ballots based solely on signature analysis.

No challenges may be made to mail-in or absentee ballot applications after 5:00 pm on the Friday before the election.

No challenges may be made to mail-in and absentee ballots at any time based on signature analysis.

NOTE: For more information about the examination of return envelopes, please refer to the Department's September 11, 2020 *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes.*

Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures, 9/28/2020, at 5, 8-9.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the General Assembly's passage of Act 77 of 2019, voters in Pennsylvania may cast their ballots in elections by absentee or no-excuse mail-in ballots. To do so, they must submit applications to county boards of elections, and in connection therewith must provide the address at which they are registered to vote. They must also sign a declaration affirming, among other things, that they are "eligible to vote by mail-in [or absentee] ballot at the forthcoming primary or election," and that "all of the information" supplied in the mail-in or absentee ballot application is "true and correct." 25 P.S. §§ 3150.12, 3146.2. Upon receipt of the application, the county board of elections must confirm the elector's qualifications and verify that the elector's address on the application matches the elector's registration. Upon the county board of elections' approval of the application, the elector is provided with a ballot, an inner "secrecy envelope" into which the ballot is to be placed, and an outer envelope into which the secrecy envelope is to be placed and returned to the board. The outer envelope has pre-printed on it (1) a voter's declaration, (2) a label containing the voter's name and address, and (3) a unique nine-digit bar code that links the outer envelope to the voter's registration file contained in the Statewide Uniform Registry of Electors ("SURE") system. After receiving the outer envelope, the board of elections stamps the date of receipt on it and then scans the unique nine-digit bar code, which links the voter's ballot to his or her registration file.

The pre-canvassing or canvassing of absentee and mail-in ballots then proceeds in accordance with the dictates of 25 P.S. § 3146.8(g)(3):

When the county board meets to pre-canvass or canvass absentee ballots and mail-in ballots under paragraphs (1), (1.1) and (2), the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable. If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File" verifies his right to vote, the county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed.

25 P.S. § 3146.8(g)(3).

Pursuant to this section, on November 9, 2020, the Philadelphia Board met to determine whether ballots separated into nine categories were "sufficient" to be pre-canvassed or canvassed. It concluded that four categories were not sufficient to be pre-canvassed or canvassed: (1) 472 ballots where the outer envelope lacked a signature and any other handwritten information; (2) 225 ballots where the outer envelope was not signed by the voter; (3) 112 ballots where the individual who completed the declaration appeared to be different from the individual who had been assigned the ballot; and (4) 4,027 ballots that were not submitted in a secrecy envelope.

In contrast, the Philadelphia Board approved as sufficient to be pre-canvassed or canvassed the ballots in five categories: (1) 1,211 ballots that lacked a handwritten date, address, and printed name on the back of the outer envelope (but were signed); (2) 1,259 ballots that lacked only a handwritten date on the back of the outer envelope (but were signed and contained a handwritten name and address); (3) 533 ballots that lack only a

handwritten name on the back of the outer envelope (but were signed and dated and contained a handwritten address); (4) 860 ballots that lack only a handwritten address on the back of the outer envelope (but were signed and dated and contained a handwritten name); (5) 4,466 ballots that lack only a handwritten name and address on the back of the outer envelope (but were signed and dated).

On November 10, 2020, the Campaign filed five pleadings entitled "Notice of Appeal via Petition for Review of Decision by the Philadelphia County Board of Elections," one for each of the five categories referenced above that the Philadelphia Board approved as sufficient to be pre-canvassed or canvassed. In each petition for review, the Campaign alleged that this Court, in *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), declared that absentee and mail-in ballots cast in violation of the Election Code's mandatory requirements are void and cannot be counted. Petition for Review, 11/10/2020, ¶ 14. The Campaign further alleged that failures to include hand-written names, addresses and dates constituted violations of mandatory obligations under Sections 3146.6(a) and/or 3150.16(a) of the Election Code. *Id.* at 15-16. Accordingly, the Campaign alleged that the Board's decisions with respect to the absentee and mail-in ballots in the above-referenced five categories were based on a clear error of law and must be reversed. *Id.* at 32.

On November 13, 2020, Judge Crumlish held oral argument on the issues raised in the Petition for Review. In response to questions from Judge Crumlish, counsel for the Campaign agreed that the Petition for Review was "not proceeding based on allegations of fraud or misconduct." Transcript, 11/13/2020, at 13-14. She further agreed that the Campaign was not challenging the eligibility of the 8,329 voters in question and did not

contest either that all of the ballots at issue were signed by the voters or that they had been timely received by the Board. *Id.* at 30-31, 37. Instead, she indicated that the Campaign was "alleging that the ballots were not filled out correctly." *Id.* at 14. Counsel for the DNC[1] argued that the failures to handwrite names, addresses and dates "are, at most, minor technical irregularities that the Supreme Court of Pennsylvania has repeatedly said do not warrant disenfranchisement." *Id.* at 14. Counsel for the Philadelphia Board added that the Election Code includes no provision requiring "absolute technical perfection" when filling out the declaration on the outer envelope containing an absentee or mail-in ballot. *Id.* at 38.

Later that same day, Judge Crumlish entered five orders affirming the Philadelphia Board's decision to count the contested ballots. In his orders, Judge Crumlish noted that while the declaration contained a specific directive to the voter to sign the declaration, it made no mention of filling out the date or other information. Trial Court Orders, 11/13/2020, ¶ 2. He further found that while the Election Code provides that while the voter shall "fill out" and date the declaration, the term "'fill out' is not a defined term and is ambiguous." *Id.* at ¶ 4. He indicated that the outer envelope already contains a pre-printed statement of the voter's name and address, and that "[n]either a date nor the elector's filling out of the printed name or of the address are requirements necessary to prevent fraud." *Id.* at ¶ 5-6. Concluding that "[t]he Election Code directs the Court of Common Pleas in considering appeals from the County Board of Elections to make such

---

[1] DNA Services Corp./Democratic National Committee (hereinafter "DNC") intervened in the proceedings before the trial court.

decree as right and justice may require[,]" *id.* at ¶ 8 (quoting 25 P.S. § 3157), Judge Crumlish upheld the decision of the Philadelphia Board.

The Campaign filed appeals from Judge Crumlish's orders in the Commonwealth Court on November 14, 2020, and the next day the Commonwealth Court issued an order consolidating the five appeals and setting an expedited briefing schedule. On November 17, 2020, the Philadelphia Board filed an application with this Court to exercise its extraordinary jurisdiction, 42 Pa.C.S. § 726, over the consolidated appeals, which we granted by order dated November 18, 2020.

In our order granting the Philadelphia Board's application for the exercise of extraordinary jurisdiction, we stated the issue to be decided as follows:

> Does the Election Code require county boards of elections to disqualify mail-in or absentee ballots submitted by qualified electors who signed their ballot's outer envelopes but did not handwrite their name, their address, and/or a date, where no fraud or irregularity has been alleged?

On November 10, 2020, the Allegheny County Board decided to canvass 2,349 mail-in ballots that contained a signed but undated declaration. Ziccarelli challenged the decision in an appeal to the court of common pleas ultimately heard and decided by the Honorable Joseph James. It was not disputed that all 2,349 voters signed and printed their name and address on the outer envelopes and returned the ballots to the Allegheny County Board on time. Each of the ballots was processed in the Statewide Uniform Registry of Electors ("SURE") system and was time-stamped when it was delivered to the Allegheny County Board on or before November 3, 2020. At a hearing, via Microsoft Teams, on November 17, 2020, the Democratic Party and James Brewster (Ziccarelli's opponent in the 45th Senatorial District race) moved to intervene, which motion was

granted. At the hearing, Ziccarelli stated that she was not claiming voter fraud regarding the challenged ballots.

In an opinion and order dated November 18, 2020, Judge James affirmed the Allegheny County Board's decision to count the ballots. He concluded that the date provision in Section 3150.16(a) is directory, not mandatory, and that "ballots containing mere minor irregularities should only be stricken for compelling reasons," citing *Shambach v. Shambach*, 845 A.2d 793, 798 (Pa. 2004). Noting that the ballots were processed in the SURE system and time-stamped when delivered to the Allegheny County Board, he found that the technical omission of the handwritten date on a ballot was a minor technical defect and did not render the ballot deficient.

Ziccarelli immediately appealed Judge James' decision to the Commonwealth Court and contemporaneously filed an application to this Court requesting our exercise of extraordinary jurisdiction, noting that the issue presented was accepted by this Court as part of the Philadelphia Board appeals. While the application was pending, the Commonwealth Court ordered expedited briefing and on November 19, 2020, issued an opinion and order reversing the Court of Common Pleas of Allegheny County and remanded. *In Re: 2,349 Ballots in the 2020 General Election; Appeal of: Nicole Ziccarelli,* __ A.3d __, 1162 C.D. 2020 (Commw. Ct. 2020). Ziccarelli then withdrew her application for extraordinary jurisdiction.

On November 20, 2020, this Court granted the Allegheny County Board's Petition for Allowance of Appeal limited to the question of whether the ballots contained in undated but signed outer envelopes should be invalidated. The opinion of the Commonwealth

Court will be discussed, as necessary, in the analysis that follows. The order was stayed pending our disposition of these consolidated cases.

The pertinent scope and standard of review follow: the Court of Common Pleas' decision is reviewed on appeal "to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made." *In re Reading Sch. Bd. of Election*, 634 A.2d 170, 171–72 (Pa. 1993). The Court of Common Pleas, in turn, could reverse the Philadelphia Board's decision only for an abuse of discretion or error of law. *See Appeal of McCracken*, 88 A.2d 787, 788 (Pa. 1952). As the issue involves the proper interpretation of the Election Code, it presents a question of law and our standard of review is de novo and our scope of review is plenary. *See, e.g., Banfield v. Cortés*, 110 A.3d 155, 166 (Pa. 2015).

## II. ARGUMENTS OF THE PARTIES

Although more fully developed in our analysis set forth later in this opinion, we here briefly summarize the arguments of the parties and intervenors.

The Campaign argues that the General Assembly set forth in the Election Code the requirements for how a qualified elector can cast a valid absentee or mail-in ballot. Campaign's Brief at 22. One of those requirements is for each elector to "fill out, date, and sign" the declaration on the Outside Envelope. *Id.* (citing 25 P.S. §§ 3146.6(a) and 3150.16(a)). According to the Campaign, this Court has repeatedly ruled that the requirements of the sections of Election Code relevant here impose mandatory obligations, and that ballots cast in contravention of the these requirements are void and cannot be counted. *Id.* at 23. As a result, the Campaign insists that the trial court erred

in affirming the Board's decision to count the 8,329 non-conforming absentee and mail-in ballots. *Id.*

The Philadelphia Board, conversely, contends that the Election Code does not require the Philadelphia Board to set aside timely-filed ballots by qualified electors that are merely missing handwritten names, street addresses, and/or dates on the signed voter declaration. Philadelphia Board's Brief at 12. Contrary to the Campaign's contention that the provisions of the Election Code at issue here impose exclusively mandatory requirements, the Philadelphia Board argues that Pennsylvania courts have long held that minor errors or omissions should not result in disenfranchisement, particularly in cases where the errors or omissions do not implicate the board's ability to ascertain the voter's right to vote or the secrecy or sanctity of the ballot. *Id.* Here, the Philadelphia Board notes that the Campaign does not allege that the voters at issue here were not qualified to vote and have not asserted that any fraud or other impropriety has occurred. *Id.* As such, it concludes that it acted properly and within its discretion in determining that these omissions were not a basis for setting aside those ballots. *Id.*

The DNC largely concurs with the Philadelphia Board's arguments, indicating that there is no statutory requirement that voters print their full name or address on the outer envelopes and that adding a date to the envelope serves no compelling purpose. DNC's Brief at 9-10.

Ziccarelli argues further that, in regard to outer envelopes not containing a voter-supplied date, this Court's opinion in *In Re: Nov. 3, 2020 General Election*, No. 149 MM 2020, 2020 WL 6252803 (Pa. Oct. 23, 2020) definitively speaks to the mandatory nature of the date requirement and, without much extrapolation, requires that such ballots not be

counted. The Allegheny County Board agrees with its Philadelphia counterpart. It counters Ziccarelli's reliance on *In Re Nov. 3, 2020 General Election* by noting that Ziccarelli's challenge to the ballots for lack of a date is based on the premise that the date is essential to the validity of the signature. Allegheny County Board points out this is the precise type of challenge that was disavowed in the case upon which Ziccarelli relies.

## III. ANALYSIS

We begin by recognizing from the outset that it is the "longstanding and overriding policy in this Commonwealth to protect the elective franchise." *Shambach v. Birkhart*, 845 A.2d 793, 798 (Pa. 2004). "The Election Code must be liberally construed so as not to deprive ... the voters of their right to elect a candidate of their choice." *Ross Nomination Petition*, 190 A.2d 719, 719 (Pa. 1963). It is therefore a well-settled principle of Pennsylvania election law that "[e]very rationalization within the realm of common sense should aim at saving the ballot rather than voiding it." *Appeal of Norwood*, 116 A.2d 552, 554–55 (Pa. 1955). It is likewise settled that imbedded in the Election Code is the General Assembly's intent to protect voter privacy in her candidate choice based on Article VII, Section 4 of the Pennsylvania Constitution and to prevent fraud and to otherwise ensure the integrity of the voting process.

We agree with the Campaign's observation that in Sections 3146.6(a) and 3150.16(a), the General Assembly set forth the requirements for how a qualified elector may cast a valid absentee or mail-in ballot. Campaign's Brief at 22. We further agree that these sections of the Election Code specifically provide that each voter "shall fill out, date, and sign" the declaration on the outside envelope. *Id.* We do not agree with the Campaign's contention, however, that because the General Assembly used the word

"shall" in this context, it is of necessity that the directive is a mandatory one, such that a failure to comply with any part of it requires a board of elections to declare the ballot void and that it cannot be counted. It has long been part of the jurisprudence of this Commonwealth that the use of "shall" in a statute is not always indicative of a mandatory directive; in some instances, it is to be interpreted as merely directory. *See, e.g.*, *Commonwealth v. Baker*, 690 A.2d 164, 167 (Pa. 1997) (citing *Fishkin v. Hi–Acres, Inc.*, 341 A.2d 95 (Pa. 1975)); *see also Commonwealth ex rel. Bell v. Powell*, 94 A. 746, 748 (Pa. 1915) (quoting *Bladen v. Philadelphia*, 60 Pa. 464, 466 (1869) ("It would not perhaps be easy to lay down any general rule as to when the provisions of a statute are merely directory, and when mandatory and imperative.")). The Campaign's reliance on this Court's recent decision in *Pa. Democratic Party v. Boockvar,* 238 A.3d 345 (Pa. 2020) for the proposition it asserts is misplaced.

In *Pa. Democratic Party*, we held that the requirement in Section 3150.16(a) that a mail-in voter place his or her ballot in the inner secrecy envelope was a mandatory requirement and thus a voter's failure to comply rendered the ballot void. *Pa. Democratic Party*, 238 A.3d at 380. In concluding that the use of the secrecy envelope was a mandatory, rather than a discretionary directive, we reviewed our prior decisions on the distinction between mandatory and discretionary provisions in the Election Code, including *Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004), *In re Luzerne County Return Board, Appeal of Elmer B. Weiskerger*, 290 A.2d 108 (Pa. 1972), and *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, Appeal of John Pierce*, 843 A.2d 1223 (Pa. 2004).

In *Shambach*, the Court declined to invalidate a write-in vote cast for a candidate who was named on the ballot, in direct violation of the Election Code's instruction that a voter could only write in a person's name if the name of said individual was "not already printed on the ballot for that office." *Shambach*, 845 A.2d at 795. In reaching that conclusion, the Court observed that "[m]arking a ballot is an imprecise process, the focus of which is upon the unmistakable registration of the voter's will in substantial conformity to the statutory requirements." *Id.* at 799 (quoting *Appeal of Gallagher*, 41 A.2d 630, 632 (Pa 1945)).

In *Weiskerger*, this Court refused to invalidate a ballot based upon the "minor irregularity" that it was completed in the wrong color of ink. The provision of the Election Code in question provided that "'[a]ny ballot that is marked in blue, black or blue-black ink ... shall be valid and counted." *Weiskerger*, 290 A.2d at 109 (citing 25 P.S. § 3063). In providing that ballots completed in the right color must be counted, we noted that the General Assembly "neither stated nor implied that ballots completed in a different color must not be counted." *Id.* We thus treated the instruction to use blue, black or blue-black ink as merely directory.

In *Pa. Democratic Party*, we compared these cases to our decision in *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election, Appeal of John Pierce*, 843 A.2d 1223 (Pa. 2004), where we held that the Election Code's "in-person" ballot delivery requirement, *see* 25 P.S. § 3146.6, was mandatory, and that votes delivered by third persons must not be counted. *Appeal of Pierce*, 843 A.2d at 1231. There, we recognized that the in-person requirement served important purposes in the Election Code, including "limit[ing] the number of third persons who unnecessarily come in contact with the ballot[,]"

... provid[ing] some safeguard that the ballot was filled out by the actual voter, ... and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper with it." *Id.* at 1232. We thus explained in *Pa. Democratic Party* that "the clear thrust of *Appeal of Pierce*, … is that, even absent an express sanction, where legislative intent is clear and supported by a weighty interest like fraud prevention, it would be unreasonable to render such a concrete provision ineffective for want of deterrent or enforcement mechanism." *Pa. Democratic Party*, 238 A.3d at 380 (citing *Appeal of Pierce*, 843 A.2d at 1232).

Based upon this comparison between *Shambach, Weiskerger* and *Appeal of Pierce,* in *Pa. Democratic Party* we determined that the decision in *Appeal of Pierce* provided the appropriate guidance for the analysis of the secrecy envelope requirement. We held that "[i]t is clear that the Legislature believed that an orderly canvass of mail-in ballots required the completion of two discrete steps before critical identifying information on the ballot could be revealed. The omission of a secrecy envelope defeats this intention." *Pa. Democratic Party*, 238 A.3d at 380. Unlike in *Shambach* and *Weiskerger* which involved "minor irregularities," the use of a secrecy envelope implicated a "weighty interest," namely secrecy in voting protected expressly by Article VII, Section 4 of our state charter. *Id.* As such, we recognized the use of a secrecy envelope as a mandatory requirement and that failures to comply with the requirement required that the ballot must be disqualified." *Id.*; *see also id.* at 378 (quoting *JPay, Inc. v. Dep't of Corr. & Governor's Office of Admin.*, 89 A.3d 756, 763 (Pa. Commw. 2014) ("While both mandatory and directory provisions of the Legislature are meant to be followed, the difference between a mandatory and directory provision is the consequence for non-compliance: a failure to

strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved.")).

To determine whether the Election Code's directive that the voter handwrite their names, address and the date of signing the voter declaration on the back of the outer envelope is a mandatory or directory instruction requires us to determine whether the intent of the General Assembly was clear and whether the failure to handwrite the information constitutes "minor irregularities" or instead represent "weighty interests," like fraud prevention or ballot secrecy that the General Assembly considered to be critical to the integrity of the election.

## (1) Failures to include handwritten names and addresses

Beginning with the Campaign's contention that ballots may not be counted if a voter fails to handwrite their name and/or address under the full paragraph of the declaration on the back of the outer envelope, we conclude that given the factual record in this case and the mechanics of the pre-canvassing and canvassing procedures including the incorporation of reliance on the SURE system, this "requirement" is, at best, a "minor irregularity" and, at worst, entirely immaterial. More to the point, the direction to the voter to provide a handwritten name and/or address is not only not mandatory, it is not a directive expressed in the Election Code. Thus, these directions do not meet the first prong of the test used in *Pa. Democratic Party*: the clear intent of the General Assembly.

The Election Code does not require that the outer envelope declaration include a handwritten name or address at all. Instead, Sections 3146.4 (absentee) and 3150.14(b) (mail-in) provide only that the declaration must include "a statement of the elector's

qualifications, together with a statement that the elector has not already voted in the primary or election." 25 P.S. §§ 3146.4, 3150.14(b). Aside from this information (none of which is relevant to the present issue), the General Assembly delegated to the Secretary of the Commonwealth the obligation to prescribe the form of declaration and envelope for absentee and mail-in ballots, presumably to allow the inclusion of information that would be helpful for administrative or processing purposes. *Id.*[2] As such, the decision to include spaces in the declaration for handwritten names and addresses was made solely by the Secretary of the Commonwealth, not the General Assembly. It would be a stretch to divine that the General Assembly was advancing any weighty interest for the inclusion of handwritten names and addresses in the declaration such that a voter's failure to include them should result in the ballot not being counted. Moreover, the Campaign does not argue that the Secretary's request for handwritten names and addresses implicated any "weighty interests" that would compel a finding that the request to provide them constituted a mandatory requirement.[3]

---

[2] None of the parties have challenged whether these provisions constituted improper delegations of legislative authority. *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017).

[3] Conversely, the Philadelphia Board and the DNC have both selectively relied upon guidance provided by the Secretary to the county boards of election that indicated that a voter's failure to handwrite his/her name and address was not a ground to set the ballot aside. Philadelphia Board's Brief at 19; DNC's Brief at 15. They have directed the Court to the Guidance published on September 11, 2020, in which the Secretary advised that "[i]f the Voter's Declaration on the return envelope is signed and the county board is satisfied that the declaration is sufficient, the mail-in or absentee ballot should be approved for canvassing." Guidance, 9/11/2020, at 3. As discussed infra at n.6, however, on September 28, 2020 the Secretary issued arguably contrary guidance stating that "[a] ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted." Guidance,

The Campaign argues that we should read the "handprinted name and address" requirement into the directives in Section 3146.6(a) and 3150.16(a) that the voter "fill out" the declaration. Campaign's Brief at 30. Citing to dictionary definitions, the Campaign contends that "fill out" means "to write or type information in spaces that are provided for it." *Id.* at 32. Because 8,349 voters did not "fill out" one or more spaces provided on the outer envelope provided in the declaration (including the voter's name and/or address), the Campaign argues that those ballots were non-conforming and could not be counted. *Id.* at 29. The directive to "fill out" does not give any legislative definition to the specific information to be placed in the blank spaces. It is the weight of the information that must be tested in the analysis. As stated, since the General Assembly did not choose the information to be provided, its omission is merely a technical defect and does not invalidate the ballot.

Further, as Judge Crumlish observed, the term "fill out" is ambiguous.[4] Trial Court Opinion, 11/13/2020, ¶ 4. As Judge Crumlish recognized, the term "fill out" is not a defined term under the Election Code. *Id.* Moreover, and contrary to the Campaign's contention that no alternative understanding of the term "fill out" has been proffered, the Campaign has failed to recognize, **the voter's name and address are already on the back of the outer envelope on a pre-printed label affixed no more than one inch**

---

9/28/20, at 9. Confusingly, she also incorporated by reference the September 11, 2020 Guidance. Both sets of Guidance are set forth on pages 8-10 supra.

[4] Where an election statute is ambiguous, courts apply the interpretative principle that that "election laws ... ordinarily will be construed liberally in favor of the right to vote." *Pa. Democratic Party*, 238 A.3d at 360–61.

**from the declaration itself.**  A voter could reasonably have concluded that the blanks requesting his or her name and address needed to be "filled out" only if the name and/or address on the label was incorrect or incomplete, as it was unnecessary to provide information that was already on the back of the outer envelope.[5]  To add further confusion, the declaration itself can be read to refer to the label:  "I hereby declare that I am qualified to vote from the below stated address" can be read to mean the address as already stated on the label.

The text of the Election Code provides additional evidence of the directory nature of the provisions at issue.  With regard to individuals who are not able to sign their name due to illness or physical disability, the General Assembly imposed a requirement that the declarant provide his or her "complete address."  25 P.S. § 3146.6(a)(3); 25 P.S. §

---

[5]  The DNC argues, with some persuasive force, that the Campaign's requested interpretation of Pennsylvania's Election Code could lead to a violation of federal law by asking the state to deny the right to vote for immaterial reasons.  Nobody acting under color of state law may deny anyone the right to vote "in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. § 10101(a)(2)(B).

Under this section, the so-called "materiality provision" of the Voting Rights Act, federal courts have barred the enforcement of similar administrative requirements to disqualify electors.  *See, e.g., Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) (disclosure of voter's social security number is not "material" in determining whether a person is qualified to vote under Georgia law for purposes of the Voting Rights Act); *Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264 (W.D. Wash. 2006) (enjoining enforcement of "matching" statute, requiring state to match potential voter's name to Social Security Administration or Department of Licensing database, because failure to match applicant's information was not material to determining qualification to vote); *Martin v. Crittenden*, 347 F.Supp.3d 1302 (N.D. Ga. 2018), *reconsideration denied*, 1:18-CV-4776-LMM, 2018 WL 9943564 (N.D. Ga. Nov. 15, 2018) (voter's ability to correctly recite his or her year of birth on absentee ballot envelope was not material to determining said voter's qualifications).

3150.16(a.1). These provisions demonstrate that the General Assembly clearly knew how to impose such a requirement when it wishes to do so. *In re Nov. 3, 2020 Gen. Election*, __ A.3d __, 2020 WL 6252803, at *14 (Pa. 2020) (stating that the General Assembly's prior inclusion of a signature comparison requirement demonstrated that "it understands how to craft language requiring signature comparisons at canvassing when it chooses to do so"). Moreover, Sections 3146.6(a)(3) and 3150.16(a.1) contain a precise form of declaration, crafted by the General Assembly, pertaining to voters with disabilities evidencing the General Assembly's understanding of how to mandate a precise declaration without resort to delegating non-essential information to the Secretary.

Finally, the text of the Election Code further demonstrates the lack of any need for handwritten names and addresses. Section 3146.8(g)(3), which relates to the canvassing of official absentee ballots and mail-in ballots, provides, in relevant part:

> When the county board meets to pre-canvass or canvass absentee ballots and mail-in ballots under paragraphs (1), (1.1) and (2), the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the "Registered Absentee and Mail-in Voters File," the absentee voters' list and/or the "Military Veterans and Emergency Civilians Absentee Voters File," whichever is applicable.

25 P.S. § 3146.8(g)(3). The county board of elections' duty to keep a "Military Veterans and Emergency Civilians Absentee Voters File," which is not relevant to the current dispute, is governed by 25 P.S. § 3146.2c(b). Section 3146.2c(a) previously housed the board's duty to keep a "Registered Absentee and Mail-in Voters File." However, the General Assembly recently eliminated this directive. *See* 2020, March 27, P.L. 41, No.

12, § 8, imd. effective (deleting subsection (a), which required county board of elections to maintain at its office "a file containing the duplicate absentee voter's temporary registration cards of every registered elector to whom an absentee ballot has been sent"). By virtue of this amendment, the General Assembly eliminated one of the reference points that still appear in Section 3146.8(g)(3). The current Section 3146.2c(c) directs the county board to maintain the "the absentee voters' list" referenced in Section 3146.8(g)(3). The General Assembly also amended Section 3146.2c(c), which previously only directed the chief clerk to "prepare a list for each election district showing the names and post office addresses of all voting residents thereof to whom official absentee ballots shall have been issued," to include such voting residents who were issued mail-in ballots. *See* 2019, Oct. 31, P.L. 552, No. 77, § 5.1, imd. effective (inserting "or mail-in" twice in subsection (c)).

As such, as relevant for our purposes, Section 3146.8(g)(3) directs that "the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) [a voter who dies before the election] and shall compare the information thereon with that contained in the … the absentee voters' list," which, pursuant to Section 3146.2c(c), now also contains voters who received mail-in ballots. A close reading of the language chosen by the General Assembly here is telling. Section 3146.8(g)(3) directs the board to "examine the declaration **on the envelope**" and "compare the information **thereon**" to the absentee (and mail-in) voters' list. 25 P.S. § 3146.8(g)(3) (emphasis added). Reading these phrases together, it is clear that the General Assembly intended that the information to be compared to the absentee (and mail-in) voters' list is the information on the outer envelope which includes the pre-printed name and address. If

the General Assembly intended for the information written by the voter to be compared to the absentee voters' list, it would have used the term "therein," thus directing the board to compare the information contained "within" the declaration (the handwritten name and address).

The following sentence in this section further suggests that the General Assembly intended such bifurcation. Section 3146.8(g)(3) next states:

> If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the … the absentee voters' list … verifies his right to vote, the county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed.

25 P.S. § 3146.8(g)(3). Here, the board is directed to consider whether the declaration is sufficient (i.e., the examination contained in the previous sentence) and also ensure that the absentee voters' list confirms the voter's right to vote (i.e., the comparison of the printed information to the relevant list from the prior sentence).

### (2) Failures to include dates

Both the Campaign and Ziccarelli argue that the requirement to state the date on which declaration was signed is a mandatory obligation requiring disenfranchisement for lack of compliance. We disagree, as we conclude that dating the declaration is a directory, rather than a mandatory, instruction, and thus the inadvertent failure to comply does not require that ballots lacking a date be excluded from counting. As reviewed hereinabove, in our recent decision in *Pa. Democratic Party*, we reiterated that the distinction between directory and mandatory instructions applies with respect to a voter's obligations under the Election Code, and that only failures to comply with mandatory

obligations, which implicate both legislative intent and "weighty interests" in the election process, like ballot confidentiality or fraud prevention, will require disqualification. *Pa. Democratic Party*, 238 A.3d at 379-80.

The Commonwealth Court and Ziccarelli relied upon the Election Code's use of the of "**shall** … date" language in construing the date obligation as mandatory. *In Re: 2,349 Ballots in the 2020 General Election, Appeal of: Nicole Ziccarelli*, __ A.3d __, 1162 C.D. 2020, 10 (Pa. Comm. 2020). Although unlike the handwritten name and address, which are not mentioned in the statute, the inclusion of the word "date" in the statute does not change the analysis because the word "shall" is not determinative as to whether the obligation is mandatory or directive in nature. That distinction turns on whether the obligation carries "weighty interests." The date that the declaration is signed is irrelevant to a board of elections' comparison of the voter declaration to the applicable voter list, and a board can reasonably determine that a voter's declaration is sufficient even without the date of signature. Every one of the 8,329 ballots challenged in Philadelphia County, as well as all of the 2,349 ballots at issue in Allegheny County, were received by the boards of elections by 8:00 p.m. on Election Day, so there is no danger that any of these ballots was untimely or fraudulently back-dated. Moreover, in all cases, the receipt date of the ballots is verifiable, as upon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system. The date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superflous.

Ziccarelli offers two alternative "weighty interests" for our consideration. She first contends that the date on which the declaration was signed may reflect whether the

person is a "qualified elector" entitled to vote in a particular election.  Pursuant to Section 3150.12b (entitled "Approval of application for mail-in ballot"), a board of elections may have determined that the person was a qualified elector and thus entitled to receive a mail-in ballot.  Pursuant to Section 2811, however, to be a qualified elector, "[h]e or she shall have resided in the election district where he or she shall offer to vote at least thirty days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within thirty days preceding the election."  25 P.S. § 2811.  As a result, Ziccarelli contends that the person may have been qualified to vote in a particular voting district at the time of applying for a mail-in ballot, but no longer a qualified elector in that voting district on Election Day.  Ziccarelli's Brief at 16.

This unlikely hypothetical scenario is not evidence of a "weighty interest" in the date on the document for assuring the integrity of Pennsylvania's system for administering mail-in voting.  Among other things, the canvassing statute, 25 P.S. § 3146.8(g)(3), directs the board to  examine the declaration on the envelope of each ballot and compare the information thereon with that contained in the now defunct "Registered Absentee and Mail-in Voters File."  *See* discussion supra pp. 27-29.  The date of signing the declaration will not be of any benefit in performing this task, as the name of the voter at issue will be on this list (as a result of his or her approval to receive a mail-in ballot), and the date of signing will provide no information with respect to whether or not he or she has left the voting district in the interim.  Most critically, our current statutory framework includes no requirement that a county board of elections investigate whether an individual who had

been confirmed as a qualified elector at the time of approval to receive a mail-in ballot remains as a qualified elector on Election Day. If the General Assembly had so intended, it would certainly have expressly stated it, as opposed to nebulously tucking such an unprecedented requirement into the instructions to the Secretary for designing the declaration.

Second, Ziccarelli argues that the date of signature of the declaration will serve to prevent double voting, as "whether an elector has already voted in the election for which the ballot is issued, by its very nature, depends on the date on which the declaration was signed." Ziccarelli's Brief at 16. Boards of elections do not use signatures or any handwritten information to prevent double voting. Duplicate voting is detected by the use of bar codes through the SURE system, and the board identifies the earlier cast vote by referencing the date it received the ballot, not the date on which the declaration was signed.

Ziccarelli and the Commonwealth Court insist that this Court "has already held that mail-in ballots with undated declarations are not 'sufficient' and, thus, must be set aside." Ziccarelli's Brief at 9; *In Re: 2,349 Ballots in the 2020 General Election*, 1162 C.D. 2020, at 10. In support of this contention, they reference an observation in our recent decision in *In re November 3, 2020 General Election*, __ A.3d __, 2020 WL 6252803 (Pa. 2020), that when assessing the sufficiency of a voter's declaration, "the county board is required to ascertain whether the return envelope has been filled out, dated, and signed – and if it fails to do so then the ballot cannot be designated as "sufficient" and must be set aside.[6]

---

[6] In her brief, Ziccarelli cites to the Guidance distributed by the Secretary of the Commonwealth on September 28, 2020 to the county boards of elections, advising that

*Id.* at \*12-13. This statement is being taken out of context. Our statement in 2020 *General Election* was in reference to the limitations on what an election board is directed by the statute to do when assessing the sufficiency of a voter's declaration for the express purpose of indicating what they were not to do, i.e., signature comparisons. The question in *In Re: Nov. 3, 2020 General Election* was a narrow one. We did not address (as it was not at issue) whether a county board of elections could find a declaration as sufficient even though it was undated. That question requires an entirely different analysis that

---

"[a] ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted." As noted in footnote 3 supra, however, the Secretary also issued Guidance on September 11, 2020, which was cited with approval by the Philadelphia Board and the DNC. No party referenced both sets of Guidance, however, even though the September 28 Guidance incorporated the September 11 Guidance. *See* Guidance, 9/28/2020, at 9 ("For more information about the examination of return envelopes, please refer to the Department's September 11, 2020 Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes.").

In any event, we will not consider this Guidance in making our decision. Neither of the parties explain how the potentially contradictory directives are to be understood. More importantly, the Secretary has no authority to definitively interpret the provisions of the Election Code, as that is the function, ultimately, of this Court. The Secretary also clearly has no authority to declare ballots null and void. "[I]t is the Election Code's express terms that control, not the written guidance provided by the Department and as this Court repeatedly has cautioned, even erroneous guidance from the Department or county boards of elections cannot nullify the express provisions of the Election Code." *In re Scroggin*, 237 A.3d 1006, 1021 (Pa. 2020). Moreover, the Secretary has no authority to order the sixty-seven county boards of election to take any particular actions with respect to the receipt of ballots. 25 P.S. § 2621(f.2).

Finally, with respect to the September 28 Guidance indicating that undated ballots must be set aside, we note that in addition to the Philadelphia and Allegheny County Boards, at least two other boards of elections also did not follow it. *Donald J. Trump for President Inc. v. Bucks Cnty. Bd. of Elections,* No. 2020-05786 (Bucks Cty. Ct. Com. Pl.); *Donald J. Trump for President, Inc., et al. v. Montgomery Cnty. Bd. of Elections*, No. 2020-18680 (Nov. 13, 2020). Both the Bucks County and Montgomery County Courts of Common Pleas affirmed the counting of the ballots even though the declarations had not been filled out in full. Each of the courts of common pleas appropriately applied this Court's precedent in doing so.

depends in significant part on whether dating was a mandatory, as opposed to a directive, requirement. We have conducted that analysis here and we hold that a signed but undated declaration is sufficient and does not implicate any weighty interest. Hence, the lack of a handwritten date cannot result in vote disqualification.

## IV. CONCLUSION

As we recognized in *Pa. Democratic Party*, "while both mandatory and directory provisions of the Legislature are meant to be followed, the difference between a mandatory and directory provision is the consequence for non-compliance: a failure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved." *Pa. Democratic Party*, 238 A.3d at 378. Here we conclude that while failures to include a handwritten name, address or date in the voter declaration on the back of the outer envelope, while constituting technical violations of the Election Code, do not warrant the wholesale disenfranchisement of thousands of Pennsylvania voters. As we acknowledged in *Shambach*, "ballots containing mere minor irregularities should only be stricken for compelling reasons." *Shambach*, 845 A.2d at 799; *see also Appeal of Gallagher*, 41 A.2d 630, 632 (Pa. 1945) ("[T]he power to throw out a ballot for minor irregularities ... must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."). Having found no compelling reasons to do so, we decline to intercede in the counting of the votes at issue in these appeals.

The decision of the Philadelphia Court of Common Pleas is hereby affirmed. The decision of the Commonwealth Court is hereby reversed and the decision of the Allegheny County Court of Common Pleas is reinstated.

Justices Baer and Todd join the opinion.

Justice Wecht concurs in the result and files a concurring and dissenting opinion.

Justice Dougherty files a concurring and dissenting opinion in which Chief Justice Saylor and Justice Mundy join.